UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| KHURRAM RASHID, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-1366 |
| ) | |
| PEORIA EAR, NOSE AND THROAT ) | |
| GROUP, S.C., ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Peoria Ear, Nose, and Throat Group, S.C.'s ("Defendant") Motion for Summary Judgment and Motion to Exclude or Strike. ECF Nos. 30, 55. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED and Defendant's Motion to Exclude or Strike is DENIED.

### BACKGROUND

Plaintiff Khurram Rashid ("Plaintiff") is a board-certified plastic surgeon who worked for Defendant's Facial Plastic & Laser Surgery Center ("FPLSC") between 2013 – 2016.[1] In 2012, Dr. Ira Uretzky, an otolaryngologist for Defendant, recruited Plaintiff after Plaintiff informed him that he was unhappy at his previous employer because he was treated like a resident and assigned low-income work or Medicaid clients. Plaintiff was confident that Defendant knew he was a male, American National Muslim of Pakistani ancestry prior to hiring him.

In April 2013, Plaintiff, Dr. James Klemens, Dr. Christopher Lansford, Dr. Uretzky, Dr. Harrison Putnam, and Bob Tudor formed the Peoria Medical Property Investors, LLC ("PMPI"),

---

[1] The facts in the Background section are derived from the Parties' undisputed material facts sections. ECF Nos. 30 at 2-13; 33 at 2-14; 53 at 1-11.

with each person named as a manager of the business. In May 2013, Plaintiff officially began working for Defendant. Plaintiff's employment agreement stated that Defendant's board would consider whether to offer Plaintiff the opportunity to become a shareholder "[n]ot later than two (2) years after the Physician commences employment," but "in no event shall a [P]hysician be legally entitled to become a shareholder in any of the aforementioned entities." ECF No. 30 at 5. Plaintiff claims he left his prior employer, where he earned $350,000.00 annually, to work for Defendant, earning $250,000.00 annually, because of the potential to be made partner after two years. In the fall of 2013, PMPI purchased a $1 million building with the goal to expand FPLSC.

In May 2015, Plaintiff asked Tudor and Dr. Uretzky about becoming a shareholder and was told they needed more time before reaching a decision. Defendant asserts that its board considered whether to offer Plaintiff the opportunity to become a shareholder but did not extend an offer to Plaintiff because FPLSC was "hemorrhaging money." *Id.* at 6.

Dr. Julie Klemens, a female allergist/immunologist, was also employed by Defendant. Her contract is different from Plaintiff's in that she was a part-time physician, was not a surgeon, and did not have any shareholder track in her agreement. Dr. Julie Klemens was married to Dr. James Klemens, both of whom worked for Defendant. Plaintiff contends that he was treated differently from Dr. Julie Klemens because she did not come to the office or she left early if there were not enough patients, yet she still received compensation. ECF No. 33 at 28.

On January 28, 2016, Plaintiff notified Defendant he was going to resign within 180 days. In February and July of 2016, Defendant continued to pitch partnership ideas to Plaintiff. On July 22, 2016, Plaintiff and Defendant entered into an extension of employment agreement for thirty days to address continuity of care issues related to Plaintiff's patients. There were no allegations in Plaintiff's resignation letter, or during contract extension negotiations, regarding discrimination

or harassment. In January 2017, Plaintiff sent a letter to Dr. James Geraghty, Defendant's president, identifying allegations of discrimination and harassment based on Plaintiff's religious beliefs, ethnic background, and his mistreatment when he was not allowed to leave work early because he was not having sex or was not married to Dr. James Klemens. ECF No. 32-1 at 1-2. This was the first instance where Plaintiff identified allegations of discrimination and harassment.

On May 2, 2017, the Illinois Department of Human Rights ("IDHR") and the United States Equal Employment Opportunity Commission ("EEOC") served Defendant with Plaintiff's complaint alleging discrimination based on national origin (Pakistani), religion (Muslim), and sex (male). Both the IDHR and EEOC complaints alleged that Defendant: (1) failed to make Plaintiff a shareholder; (2) treated Plaintiff differently than similarly-situated, non-Muslim, non- Pakistani, female physician employees who were allowed to leave work if no patients were present; and (3) made comments disparaging Plaintiff's national origin and religion. The disparaging comments included: (i) on one occasion, Tudor, Defendant's CEO, encouraged Plaintiff to wear Dr. Uretzky's therapeutic neck collar to the airport and try to get through security, and (ii) Tudor repeatedly inquired into Plaintiff's passport status when presidential candidate Donald Trump's poll numbers rose. On July 10, 2018, the IDRH and EEOC issued its dismissal and notice of right to sue letter to Plaintiff.

On October 8, 2018, Plaintiff filed the Complaint in this matter alleging: (1) discrimination because of national origin in violation of Title VII, 42 U.S. Code § 2000e, *et seq.* (Count I); (2) discrimination because of religion in violation of Title VII, 42 U.S. Code § 2000e, *et seq.* (Count II); (3) a hostile work environment because of national origin in violation of Title VII, 42 U.S. Code § 2000e, *et seq.* (Count III); (4) a hostile work environment because of religion in violation of Title VII, 42 U.S. Code § 2000e, *et seq.* (Count IV); (5) discriminatory working conditions

because of national origin in violation of Title VII, 42 U.S. Code § 2000e, *et seq.* (Count V); (6) discriminatory working conditions because of religion in violation of Title VII, 42 U.S. Code § 2000e, *et seq.* (Count VI); and (7) discriminatory working conditions because of sex in violation of Title VII, 42 U.S. Code § 2000e, *et seq.* (Count VII). ECF No. 1. Plaintiff claims the following adverse employment actions: (1) Defendant did not extend him an offer to become a shareholder because he was of Pakistani ancestry and Muslim; (2) Defendant treated him differently than other female physicians who were allowed to leave work early who were not Pakistani, Muslim, and male; and (3) Defendant created a hostile work environment by making derogatory comments about his national origin and religion. *Id.* On April 2, 2020, Defendant filed a Motion for Summary Judgment. ECF No. 30. On April 23, 2020, Plaintiff filed his response. ECF No. 33. On May 6, 2020, Defendant filed its reply. ECF No. 53. On the same date, Defendant also filed a Motion to Exclude or Strike certain exhibits filed by Plaintiff. ECF No. 55. On May 27, 2020, Plaintiff filed his response. ECF No. 58. This Opinion follows.

## STANDARD OF REVIEW

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). The moving party may meet its burden by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 322. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322. The court must then determine whether there is a need for trial, in other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 477 U.S. at 249.

## ANALYSIS

To prevail on summary judgment in an employment discrimination claim under Title VII, a plaintiff must present evidence that would allow a reasonable finder of fact to conclude that the defendant took a materially adverse employment action against him because of his race, color, religion, sex, or national origin. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Courts often use the *McDonnell Douglas* burden-shifting framework to organize the evidence, although the evidence must ultimately be considered as a whole when deciding the summary judgment motion. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Under the framework, a plaintiff must make a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If the evidence, considered as a whole, would permit a reasonable factfinder to conclude that plaintiff's national origin, religion, or sex caused the adverse employment action, then summary judgment for defendant should be denied. *See Ortiz*, 834 F.3d at 765.

I.      Discrimination

Plaintiff claims discrimination based on his Pakistani national origin, Muslim religion, and sex. Plaintiff states he suffered the following adverse employment actions: (1) he was not extended an offer to become a shareholder; (2) was treated differently than another female physician, Dr. Julie Klemens, who could leave work early; and (3) was subjected to derogatory comments by Tudor, Defendant's CEO. Defendant argues that there are no allegations brought forth that demonstrate anyone specifically uttered derogatory comments about Plaintiff's national origin and that he failed to show he suffered an adverse employment action or that other similarly situated employees outside his class were treated more favorably. Defendant further contends that even if the Court assumed that Plaintiff could state a prima facie case for discrimination, it would be rebutted due to the financial circumstances of FPLSC or the terms and conditions in his contract.

The applicable standard at summary judgment "is simply whether the evidence would permit a reasonable factfinder to conclude" that the plaintiff's national origin, religion, and/or sex caused the adverse employment action. *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 596 (7th Cir. 2017) (quoting *Ortiz*, 834 F.3d at 765). To establish a prima facie case of discrimination, a plaintiff must set forth evidence that: "(1) he was a member of a protected class; (2) that he was meeting his employer's legitimate performance expectations; (3) that he suffered an adverse employment action; and (4) that he was treated less favorably than similarly situated individuals who are not members of his protected class." *Balance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005). If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its decision. *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017) (citing *McDonnell Douglas*, 411 U.S. at 802). If the employer meets this requirement, the burden then shifts back to the plaintiff, who must

produce evidence "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000). To demonstrate pretext, "a plaintiff must show more than that the employer's decision was incorrect; the plaintiff must also show the employer lied about its proffered explanation." *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001). A plaintiff can demonstrate pretext by showing: (1) the defendant's explanation for its decision had no basis in fact; (2) the explanation was not the "real" reason; or (3) the reason stated was insufficient to warrant the allegedly discriminatory action. *Id.*

Here, Plaintiff is a member of a protected class because he is Pakistani and Muslim. While Defendant does contend that after Plaintiff resigned he had 557 charting deficiencies and forty-nine outstanding billing issues, Defendant has not provided an argument that Plaintiff was not meeting their legitimate business expectations during his employment. *See* ECF No. 32 at 91. The deficiencies led to a dispute whether Plaintiff would receive his final bonus payment, and this is a topic that Plaintiff has not claimed as an adverse employment action or an issue in this matter. Accordingly, the first two elements of a prima facie discrimination case have been established.

Defendant argues that their failure to make Plaintiff a shareholder does not constitute an adverse employment action because the express language in Plaintiff's contract stated that "in no event shall [Plaintiff] be legally entitled to become a shareholder." *Id.* at 61. Moreover, Defendant states it established there were monetary issues with FPLSC and serious questions whether it would continue to exist; therefore, to extend a shareholder position to Plaintiff would not have been fair financially or professionally. Plaintiff claims that the refusal to invite an employee to become a shareholder constitutes an adverse action.

7

Adverse employment actions are typically economic injuries such as dismissal, demotion, suspension, failure to promote, or decreased pay. *Markel v. Bd. of Regents of Univ. of Wisconsin Sys.*, 276 F.3d 906, 911 (7th Cir. 2002) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998)). While there was no legal obligation to promote Plaintiff as a shareholder, as expressed in his contract, courts have consistently held that a failure to promote is considered an adverse employment action. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 558 (7th Cir.2014) (considering a failure to promote as an adverse employment action for purposes of a Title VII claim); *see also Murphy v. PricewaterhouseCoopers, LLP*, 580 F. Supp. 2d 4, 11 (D.D.C. 2008), *aff'd sub nom. Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370 (D.C. Cir. 2010) (finding employee's non-promotion to partner during three partner admission cycles constituted as an adverse employment action). Therefore, the third element of a prima facie discrimination case has been established.

Notwithstanding the above, the Court finds that Plaintiff has failed to establish the fourth and final element of the prima facie case – that Dr. Julie Klemens was similarly situated to him and treated more favorably. Plaintiff claims that the similarities between himself and Dr. Julie Klemens were that they were both Defendant's employees and contractually obligated to work a designated number of hours. Dr. Julie Klemens is female and Asian-American. Plaintiff is male and of Pakistani heritage. Plaintiff states he was treated differently than Dr. Julie Klemens, because if there were not enough patients on a given day, she would not come in or leave early, yet still receive compensation. *See* ECF No. 32 at 16. Plaintiff asserts that he was not afforded the privilege of curtailing his workday if his patient load was light. When he asked for the same treatment in terms of hour flexibility, Plaintiff claims he was told by Tudor that would never happen unless he was also having sexual relations with Dr. James Klemens. *Id.* at 12-13.

To be similarly situated, the plaintiff and the other individual must be "directly comparable in all material respects." *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009). However, it is undisputed that Dr. Julie Klemens was a part-time physician, was not a surgeon, and did not have a shareholder provision in her contract. ECF Nos. 32 at 16; 33 at 4. In addition, her salary was lower than Plaintiff's by approximately $100,000.00 and she did not possess the medical qualifications to cover for ear, nose, and throat ("ENT") or for plastic surgery. ECF Nos. 32-1 at 11; 33 at 4. On the other hand, Plaintiff was a full-time physician, a surgeon, and had a shareholder provision in his contract. Given the aforementioned differences, the Court fails to find that Dr. Julie Klemens was similarly situated with Plaintiff. Plaintiff has also not identified another employee who was similarly situated but treated differently.

Even if Plaintiff had established his prima facie case, Defendant gave a legitimate, nondiscriminatory reason for failing to promote him to shareholder – FPLSC was losing money in 2015 and 2016. ECF No. 51 at 4. On January 20, 2016, there was a physician meeting held where it was noted that FPLSC had a net loss of $266,809.00 for the 2015 calendar year. ECF No. 32 at 77. Eight days later, Plaintiff submitted his resignation notice. *Id* at 79. Despite the financial woes, Defendant considered making Plaintiff a shareholder, and tried to work out an arrangement, by contnuing to negotiate with Plaintiff after he provided his resignation notice; however, the Parties were not able to come to an agreement. ECF Nos. 32 at 8; 33 at 5; 51 at 4. Plaintiff failed to produce sufficient evidence showing the reasons Defendant did not make Plaintiff a shareholder was pretext for discrimination. Accordingly, the Court grants Defendant's Motion for Summary Judgment regarding Plaintiff's discrimination claims.

II.  **Hostile Work Environment**

Plaintiff's hostile work environment claim is based on the following: (1) Tudor's comment telling Plaintiff to wear a therapeutic neck collar to the airport and try to get through security, and (2) his repeated inquiries into Plaintiff's passport status when presidential candidate Donald Trump's poll numbers rose. Defendant argues that these actions were neither severe nor pervasive enough to alter the conditions of employment.

"Title VII prohibits the creation of a hostile work environment." *Vance v. Ball State University*, 133 S.Ct. 2434, 2441 (2013). To avoid summary judgment, the employee must establish: (1) that the work environment was both objectively and subjectively offensive, (2) that the harassment was based on his membership in a protected class, (3) that the conduct was either severe or pervasive, and (4) that there is a basis for employer liability. *Vance v. Ball State University*, 646 F.3d 461, 469 (7th Cir. 2011), *aff'd* 133 S.Ct. 2434 (2013). In determining whether contested conduct created an objectively hostile work environment, a court must look at all of the surrounding circumstances and social context, including whether the conduct was frequent or severe, physically threatening or humiliating, or unreasonably interfered with the employee's work performance. *McKenzie v. Milwaukee County*, 381 F.3d 619, 624 (7th Cir. 2004); *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) (internal citation omitted). "[I]solated incidents, unless 'extremely serious,' will not support a hostile work environment claim." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 648 (7th Cir. 2011).

Plaintiff contends that Tudor suggesting he wear a therapeutic neck collar was essentially Tudor likening Plaintiff to a terrorist. Tudor and Dr. Uretzky both testified that this statement never occurred. ECF Nos. 50 at 12; 51 at 9. Even if it did, as Plaintiff argues, the Court finds that this comment was an isolated incident that could be likened to an offhand comment. *See Faragher v.*

*City of Boca Raton,* 524 U.S. 775, 788 (1998) (finding offhand comments will not amount to discriminatory changes in the terms and conditions of employment).

The Court also does not find Tudor's inquiries into the status of Plaintiff's passport, even though Plaintiff is an American citizen, to be so severe or pervasive as to alter the condition of his employment and create a hostile working environment. In *Thompson v. Memorial Hospital of Carbondale*, 625 F.3d 394 (7th Cir. 2010), the Seventh Circuit upheld a district court's grant of summary judgment on a Title VII hostile work environment claim where an African-American plaintiff complained of a supervisor's comment that his children would look like "black beans that were in a jar," a coworker's dare that plaintiff call him a racist, a coordinator's statements that plaintiff could not do what others could do because he was black, and that the same coordinator was not sure what her neighbors would think if she invited a black person to her home. *Id.* at 401. All of these occurrences were held to be "circumstances [that] do not reflect severe or pervasive enough conduct to be actionable under Title VII." *Id.* at 401–02. While the aforementioned actions are not condoned by this Court, they were alleged to be more continuous by the *Thompson* plaintiff than the allegations Plaintiff has brought forth in his claim. If the Seventh Circuit did not find that the *Thompson* plaintiff had a Title VII hostile work environment claim, the Court similarly here cannot find the suggestion that Plaintiff attempt to wear a therapeutic neck collar through airport security or inquiries into his passport status to be so severe or pervasive that it altered the conditions of Plaintiff's employment. *See id; see Williams v. Arrow Chevrolet, Inc.,* 121 F. App'x 148 (7th Cir. 2005) (stating that Muslim co-worker's invitation to go get pork chops at restaurant operated by Muslims and manager's vulgar comment about female Muslim customer did not create hostile work environment on account of Muslim employee's religion, in violation of Title VII); *see*

11

*also Hafford v. Seidner, 183 F.3d 506,* 514 (6th Cir.1999) (mocking Muslim greeting and accusing plaintiff of inciting a "holy war" did not amount to hostile work environment).

Overall, in situating Plaintiff's allegations among the case-law guideposts, his limited number of claims are insufficiently severe to support a hostile work environment claim. *Compare Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) ("An objectively hostile work environment will not be found where most of the conduct that forms the basis of a plaintiff's claim . . . [are] isolated and not particularly severe.") (internal quotation and alterations omitted); *and Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271–72 (7th Cir. 2004) (finding unambiguously racial and offensive epithets did not create a genuine issue); *and Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002) (opining that a handful of offensive comments, most of which were by fellow employees, were not sufficient to raise a jury issue), *with Lapka v. Chertoff*, 517 F.3d 974 (7th Cir. 2008) ("[A]ssaults within the workplace create an objectively hostile work environment for an employee even when they are isolated."); *and Loughman v. Malnati Org., Inc.,* 395 F.3d 404, 407–08 (7th Cir. 2005) (finding genuine issue for jury based on inappropriate comments and "serious physical violations."). Even accepting Plaintiff's interpretation that Tudor was comparing Plaintiff to a terrorist and that Tudor was taunting him about his passport status given Trump's "hype at the time to ban Muslims from entering the country," no epithets or explicitly insulting words were used. ECF No. 33 at 41. Plaintiff has likewise not suggested that the comments were protracted or persisted beyond a single or a few brief statements in each instance. Additionally, none of the comments were accompanied by any physical gestures or intimidation. The Court finds Plaintiff's allegations regarding the therapeutic neck collar and his passport status are not enough to demonstrate the type of environment the Seventh Circuit has repeatedly held is required to survive summary judgment. *See Nichols v.*

*Michigan City Plant Planning Dep't*, 755 F.3d 594, 601 (7th Cir. 2014) (holding that one-time use of a racial epithet was not severe enough to trigger liability and that a plaintiff can only succeed if the totality of the collection of allegedly harassing incidents triggers liability). Accordingly, the Court grants Defendant's Motion for Summary Judgment regarding Plaintiff's hostile work environment claims.

### III. Motion to Strike or Exclude

Defendant has also filed a Motion to Strike or Exclude under Federal Rule of Civil Procedure 37(c)(1) to have Dr. Putnam's and Plaintiff's affidavits, and supporting documents that were attached thereto, stricken or excluded. ECF No. 55. Plaintiff submitted these documents as part of his response to Defendant's Motion for Summary Judgment. Defendant argues that Dr. Putnam was not named as a witness until after Plaintiff responded to Defendant's Motion, and Plaintiff's affidavit was also not produced until after Defendant's Motion was filed. Dr. Putnam's affidavit included pages of financial records that Defendant claims were also not produced in discovery. Accordingly, Defendant claims that Plaintiff violated Federal Rule of Civil Procedure 26.

Plaintiff responds by stating that Defendant disclosed Dr. Putnam in its Amended Rule 26 disclosures, and therefore, Defendant has not been subjected to prejudice or surprise. Plaintiff also states that he did not receive the FPLSC financial records until April 20, 2020, at which time he promptly disclosed the records to Defendant. Nonetheless, Plaintiff contends that Defendant had access to these records as it owned FPLSC. Plaintiff also states that he can provide an affidavit in response to a summary judgment motion in order to present evidence of disputed material facts.

Rule 37(c)(1) states in part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence

13

>on a motion, at a hearing, or at a trial, unless the failure was substantially justified or was harmless.

Fed. R. Civ. P. 37(c)(1). Rule 26 requires a party to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses – along with the subjects of that information . . ." Fed. R. Civ. P. 26(a)(1)(A). When a party fails to comply with its Rule 26(a) and (e) ongoing disclosure obligations, the "sanction of exclusion," pursuant to Rule 37(c)(1), applies. *David v. Caterpillar, Inc*., 324 F.3d 851, 857 (7th Cir. 2003). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Id.* In making this determination, the district court should consider and weigh the following factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *Id.*

Defendant cites no authority for the proposition that a witness disclosed by one party to the other party must then be disclosed by the receiving party if that party concludes the witness has discoverable information. Defendant disclosed Dr. Putnam as a witness along with the subject of his testimony in its Amended Rule 26 disclosures. ECF No. 58-1 at 4-5. "[O]nce both parties became aware of a witness with discoverable information, any failure to supplement prior Rule 26(a) disclosures [is] harmless. *Mitchell v. Iowa Interstate RR Ltd*., No. 07-cv-1351, 2010 WL 2089305, at *1 (C.D. Ill. May 25, 2010). Defendant could not have been prejudiced or surprised by Dr. Putnam's affidavit because it offered him as a witness and the affidavit included subjects of testimony that Defendant included in its Amended Rule 26 disclosures. In fact, Defendant states that the affidavit did not include any "newly-discovered information." ECF No. 55 at 6. The Court also does not find that Plaintiff acted in bad faith, especially since Dr. Putnam was identified during

discovery. Accordingly, the Court finds the inclusion of Dr. Putnam's affidavit harmless and declines to exclude or strike it.

The financial documents produced by Plaintiff cover 2009 through June 2015. ECF No. 47 at 4-54. The pertinent years to this matter are 2015 and 2016, when Defendant asserted that FPLSC was losing money and, as a result, was not able to offer Plaintiff a shareholder position. Accordingly, the only financial documents that could be relevant are the ones that span the first six months of 2015; however, this does not give the Court, or the parties, the fuller picture. Defendant already demonstrated that FPLSC had a net loss of $266,809.00 for the 2015 calendar year. ECF No. 32 at 77. Seeing only the first six months of 2015 does not establish whether FPLSC lost money for that entire year. Even if it had a net profit for those first six months, Defendant has produced evidence that the ultimate result was a loss for the 2015 year. Moreover, the financial documents produced were prepared by an accounting firm specifically for Defendant and FPLSC. It is more likely than not that Defendant already had these documents in its possession. Since the financial documents produced do not impact Defendant's legitimate, nondiscriminatory reason for its decision, the Court finds the financial documents produced harmless and declines to exclude or strike them. *See McKinney,* 866 F.3d at 807; *see also David*, 324 F.3d at 857.

Defendant contends that Plaintiff's affidavit: "(i) supplements, (ii) qualifies and/ or (iii) contradicts prior testimony; (iv) raises new issues not previously discussed or disclosed in his deposition or discovery production; and (v) poses unfair surprise and prejudicial harm to [Defendant]." ECF No. 55 at 6-7. However, Defendant does not provide the Court with any instance where Plaintiff's affidavit conflicts with the record or his prior testimony. *See generally Adusumilli v. City of Chicago*, 164 F.3d 353, 360 (7th Cir. 1998) (stating that when a party's deposition and affidavit are in conflict, the affidavit is to be disregarded); *see also Dereak v. Don*

15

*Mattox Trucking, LLC*, No. 06-cv-3123, 2008 WL 11366516, at *4 (C.D. Ill. Feb. 8, 2008) (court found certain aspects of plaintiff's affidavit to contradict specific portions of his testimony that defendant referred to in its motion). "It is not [a] court's job to scour [the] record in search of evidence . . ." *Hildreth v. Butler*, No. 18-2660, 2020 WL 2536620, at *7 (7th Cir. May 19, 2020). In contrast, Plaintiff has provided the Court with specific instances where the information provided in Plaintiff's affidavit was discussed at his deposition by comparing the paragraphs in the affidavit with page numbers of Plaintiff's deposition. Federal Rule of Civil Procedure 56 generally allows a party to provide an affidavit "made on personal knowledge" during summary judgment. Fed. R. Civ. P. 56(e)(1). Since Defendant has not sufficiently alleged a basis for why Plaintiff's affidavit should be stricken or excluded, the Court finds the affidavit produced harmless and declines to exclude or strike it.

## CONCLUSION

For the reasons stated above, Defendant's [30] Motion for Summary Judgment is GRANTED and Defendant's [55] Motion to Exclude or Strike is DENIED. The Clerk is DIRECTED to enter judgment in favor of Defendant and against Plaintiff. The Clerk is also DIRECTED to VACATE the final pre-trial conference date of July 7, 2020, and trial date of August 3, 2020. This case is now TERMINATED.

ENTERED this 8th day of June, 2020.

                                              /s/ Michael M. Mihm
                                                Michael M. Mihm
                                            United States District Judge